**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RYAN MORRISON, | ) Case No. CV 19-1961-JGB (JPR) |
| Plaintiff, | ) |
| | ) ORDER DISMISSING COMPLAINT WITH |
| v. | ) LEAVE TO AMEND |
| | ) |
| CITY OF LOS ANGELES et al., | ) |
| | ) |
| Defendants. | ) |

On March 15, 2019, Plaintiff, proceeding pro so, filed a civil-rights complaint against the City of Los Angeles, the Los Angeles Police Department, the deputy district attorney who unsuccessfully prosecuted him, and four Los Angeles police officers.[1] He sues all the individual Defendants in their official and individual capacities. He seeks only monetary damages. His claims arise from a November 2016 arrest and subsequent prosecution for assault and battery, of which a jury apparently acquitted him.

---

[1] He also sues a number of Does without attributing any particular actions to them.

1

After screening the Complaint under 28 U.S.C. § 1915(e)(2), the Court finds that some of Plaintiff's causes of action fail to state a claim as currently framed and that Defendant Jeffrey Megee is likely entitled to absolute immunity. Because it appears that at least some of the defects can be cured by amendment, the Complaint is dismissed with leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc) (holding that pro se litigant must be given leave to amend complaint unless absolutely clear that deficiencies cannot be cured). If Plaintiff desires to pursue any of his claims, he is ORDERED to file a first amended complaint within 28 days of the date of this order, remedying the deficiencies discussed below.[2]

## I. PLAINTIFF'S FIRST CAUSE OF ACTION FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

Plaintiff's first claim is against all Defendants and is titled "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (Non-Prisoners)." (Compl. at 24.) But he alleges no operative facts or legal theories separate from those underlying his other federal constitutional causes of action; indeed, the claim simply refers to "claims 2 through 6 of this Complaint." (Id. ¶ 79.) If Plaintiff intends this claim to serve as some sort of umbrella for the discrete § 1983 claims he does bring, it is duplicative and unnecessary. If he intends this claim to state a cause of action separate from those in claims two through six, he must

---

[2] On April 2, 2019, Plaintiff filed a request for service of the Complaint by the U.S. Marshal. Should the Court eventually order one of Plaintiff's complaints served, that service will be effected by the Marshal given Plaintiff's IFP status. Accordingly, the request is denied as moot.

identify its legal theory and supporting facts in any amended complaint he files. Otherwise, he should omit the claim.

**II. PLAINTIFF'S OFFICIAL-CAPACITY CLAIMS AGAINST THE DEFENDANT OFFICERS AND HIS MUNICIPAL-LIABILITY CLAIMS FAIL**

Plaintiff sues LAPD officers David Mirzoyan, Ricardo Acosta, Michael Boylls, and Alvaro Ramos in their individual and official capacities. (See Compl. at 2.) The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Brandon v. Holt, 469 U.S. 464, 471-72 (1985). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 166 (emphasis in original). But a municipality or local-government entity may be held liable under § 1983 only for injuries arising from official policy or longstanding custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 694 (1978).

Plaintiff has not named the City of Los Angeles or the LAPD as Defendants in claims two through six, his federal constitutional claims. But by suing the officers in their official capacity, he effectively sues those entities too. See Graham, 473 U.S. at 166. Nowhere in those claims does Plaintiff identify the "official policy or longstanding custom" that caused his injuries, rendering his official-capacity claims insufficient as a matter of law. See Monell, 436 U.S. at 690-91, 694; Hayes v. Voong, 709 F. App'x 494, 495 (9th Cir. 2018) ("The district court properly dismissed [plaintiff's] [] claims against defendants in their official capacities because [he] failed to

identify . . . a policy or custom of the State that allegedly violated federal law."); Fortson v. L.A. City Attorney's Office, 852 F.3d 1190, 1192 (9th Cir.) ("[Plaintiff's] official-capacity claims against the Los Angeles Police Department also fail because [he] has not sufficiently alleged an underlying constitutional violation or otherwise identified an official policy or custom that was the 'moving force' behind a potential constitutional violation."), cert. denied, 138 S. Ct. 69 (2017).

Elsewhere in the Complaint, in claim nine, which appears to rest primarily on state law, Plaintiff sues "all Defendants," including the City of Los Angeles and the LAPD, for "negligence [and] inadequate training/supervision/discipline." (Compl. at 64.) To the extent he intended to invoke § 1983 as the legal theory for that claim or use it to support entity liability for claims two through six, he still fails to state a claim upon which relief can be granted.[3]

Municipalities and local-government entities are considered

---

[3] Along with the claim for negligence, Plaintiff brings several other state-law causes of action arising from the same alleged nexus of conduct, namely, malicious prosecution (claim six), battery (claim seven), "false reports" (claim eight), and intentional infliction of emotional distress (claim 10). The Court defers screening of Plaintiff's state-law claims until he has addressed the deficiencies in his federal claims identified herein. See Herman Family Revocable Tr. v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001). The Court notes, however, that in bringing state-law tort claims against a public employee, a plaintiff must plead compliance with the Tort Claims Act or the claim is subject to dismissal. State v. Super. Ct. (Bodde), 32 Cal. 4th 1234, 1245 (2004). This requirement applies in federal court. See Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff's failure to allege compliance with the Tort Claims Act could lead to dismissal of his state-law tort claims.

4

"persons" under § 1983 and therefore may be liable for causing a constitutional deprivation. See Monell, 436 U.S. at 690-91; see also Long v. Cnty. of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006). California police departments are independently suable public entities. See Streit v. Cnty. of L.A., 236 F.3d 552, 565 (9th Cir. 2001) (citing Shaw v. Cal. Dep't of Alcoholic Beverage Control, 788 F.2d 600, 605 (9th Cir. 1986), and Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 624 n.2 (9th Cir. 1988)).

Because no respondeat superior liability exists under § 1983, a municipality is liable only for injuries that arise from an official policy or longstanding custom. Monell, 436 U.S. at 694; City of Canton v. Harris, 489 U.S. 378, 385-87 (1989). A plaintiff must show "that a [municipal] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992) (per curiam) (citation omitted).

In addition, a plaintiff must allege facts demonstrating that the policy was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Id.; see also Thompson v. City of L.A., 885 F.2d 1439, 1443-44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or

isolated events are [sic] insufficient to establish custom."), overruled on other grounds by Bull v. City & Cnty. of S.F., 595 F.3d 964, 981 (9th Cir. 2010) (en banc). "A custom can be shown or a policy can be inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" Pierce v. Cnty. of Orange, 526 F.3d 1190, 1211 (9th Cir. 2008) (as amended) (quoting Gillette, 979 F.2d at 1349).

A plaintiff may also establish municipal liability by demonstrating that the alleged constitutional violation was caused by a failure to train municipal employees adequately. See Harris, 489 U.S. at 388. A plaintiff claiming failure to train must allege facts demonstrating the following:

> (1) he was deprived of a constitutional right, (2) the [municipality] had a training policy that amounts to deliberate indifference to the constitutional rights of the persons with whom its police officers are likely to come into contact, and (3) his constitutional injury would have been avoided had the [municipality] properly trained those officers.

Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007) (citations and alterations omitted). "Proof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability" under a failure-to-train theory. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985); Szajer v. City of L.A., No. CV 07-07433 SVW (PLAx), 2008 WL 11350227, at *7 (C.D. Cal. Nov. 12, 2008) ("[M]unicipal liability based upon failure to train cannot be derived from a single incident."),

aff'd, 632 F.3d 607 (9th Cir. 2011).

Plaintiff includes a litany of complaints about the City of Los Angeles and the LAPD but alleges no concrete facts to support his theories of liability; nor does he identify any policy or longstanding custom that caused his alleged injuries. (See Compl. ¶¶ 170-84.) He does not reference any events other than his own arrest and prosecution, nor does he say anything concerning whether or how the individual Defendants were trained; such allegations do not establish an actionable federal claim against a municipality, for failure to train or supervise or otherwise. See Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1159 (9th Cir. 2012) ("showing that a single employee was inadequately trained [not] sufficient; there must be a 'widespread practice'" (quoting Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989))); Lewis v. Cnty. of San Diego, No. 13-cv-2818-L (JMA)., 2014 WL 3527719, at *5 (S.D. Cal. July 15, 2014) ("A Monell claim, whether for a municipal policy or for failure to train, generally cannot be premised on a single unconstitutional incident."); Cannon v. City of Petaluma, No. C 11-0651 PJH., 2012 WL 1183732, at *19 (N.D. Cal. Apr. 6, 2012) (Plaintiff's "allegations . . . relate solely to his own, isolated experiences, which cannot support a Monell claim for failure to train or supervise").

To sufficiently plead a federal cause of action against the City of Los Angeles or the LAPD on a failure-to-train theory, Plaintiff must allege facts showing that each entity was "on notice that specific training was necessary to avoid this constitutional violation," Connick v. Thompson, 563 U.S. 51, 63 (2011), and no such training or only inadequate training was

provided. Conclusory allegations of vague unconstitutional customs, policies, or practices are not sufficient, nor are allegations concerning only his own alleged unconstitutional injuries. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Rodriquez v. City of Modesto, 535 F. App'x 643, 646 (9th Cir. 2013).

**III. PLAINTIFF FAILS TO STATE ANY VIABLE CLAIMS AGAINST DEFENDANT MEGEE**

Plaintiff sues Defendant Megee, the deputy district attorney who prosecuted him, but those allegations fail to overcome Megee's prosecutorial immunity or the 11th Amendment.

**A. Megee Is Likely Absolutely Immune in His Individual Capacity**

Section 1983 claims for monetary damages against individual prosecutors are barred by absolute prosecutorial immunity if the claimed violations are based on their activities as legal advocates during the judicial phase of criminal proceedings. Van de Kamp v. Goldstein, 555 U.S. 335, 342-43 (2009); Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976) (prosecutorial immunity applies with "full force" to activities "intimately associated with the judicial phase of the criminal process"; "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983"); Genzler v. Longanbach, 410 F.3d 630, 637 (9th Cir. 2005) (noting that "prosecutor enjoys absolute immunity from a suit alleging that he maliciously initiated a prosecution, used perjured testimony at trial, or suppressed material evidence at trial," among other things). Further, "prosecutors enjoy absolute immunity for their

decisions to prosecute," or not. Reichle v. Howards, 566 U.S. 658, 668 (2012); Barnett v. Marquis, 662 F. App'x 537, 539 (9th Cir. 2016) ("A prosecutor's decision not to prosecute is entitled to absolute immunity.") And prosecutors are absolutely immune for statements made in a probable-cause hearing. Burns v. Reed, 500 U.S. 478, 487-88, 492 (1991) (finding prosecutor absolutely immune, including against charge that he "deliberately misled the court" during probable-cause hearing by eliciting false testimony); Rutledge v. Cnty. of Sonoma, No. C 07-4274 CW., 2009 WL 3075596, at *8 (N.D. Cal. Sept. 22, 2009) (prosecutor absolutely immune for conduct at preliminary hearing "even if he conspired to elicit and did elicit false testimony, because it was part of the judicial process after criminal proceedings began").

According to the Complaint, in early February 2017, a judge denied a request for a civil restraining order against Plaintiff. (Compl. ¶ 41.) In that hearing, the judge found the "alleged victim"[4] not to be credible and to have falsified statements and allegations against Plaintiff. (Id.) There is no allegation that Defendant Megee attended or otherwise knew about that proceeding.

On February 16, 2017, the state court held a preliminary hearing to determine whether probable cause supported the charges against Plaintiff. (Id. ¶ 43.) To that point, Plaintiff had not received "any description of the accusations made against him, the identities of the officers involved, or any police reports, discovery or any other information regarding the criminal case

---

[4] The "alleged victim" referenced by Plaintiff was apparently his mother. (See Compl. ¶ 31 (Plaintiff charged for "attacking his mother").)

9

except for the names of the charges." (Id.)  The alleged victim testified again at the preliminary hearing, but this time she gave a "different account of events" than at the hearing on the civil restraining order. (Id. ¶ 46.) Megee did not stop the hearing or dismiss the charges against Plaintiff. (Id. ¶¶ 46-49.) He represented to the court that a medical report indicated that injuries sustained by the alleged victim were "caused by an assault." (Id. ¶ 45.) The court found that probable cause supported the charges against Plaintiff, and the case proceeded. (Id. ¶ 49.)

In April 2017, Plaintiff received discovery, which included a medical report. (Id. ¶ 50.) The medical report "showed no indication that an injury occurred to the Alleged Victim due to an assault, but did indicate other causes of the injury such as numerous illnesses that were more consistent with the injuries[.]" (Id.) In March 2018, the jury "immediately and unanimously acquitted the Plaintiff on every charge brought by DDA Megee." (Id. ¶ 77.) Megee did not prosecute the alleged victim "for more than a dozen statements of perjury" or the "admission of fraud." (Id. ¶ 75; see also id. ¶ 46.)

At best, Plaintiff has alleged that Megee knowingly elicited false testimony from the alleged victim, made a false statement to the court about the cause of her injuries, and refused to prosecute a witness who lied and committed fraud. Plaintiff does not allege that Megee took any action outside of the judicial phase of criminal proceedings, and a prosecutor's charging decisions are afforded absolute immunity; therefore, Megee is likely entitled to absolute immunity for all claims against him in

10

his individual capacity. See Reichle, 566 U.S. at 668; Burns, 500 U.S. at 492; Barnett, 662 F. App'x at 539; Rutledge, 2009 WL 3075596, at *8.

**B. Plaintiff's Official-Capacity Claims Against Megee Are Barred by the 11th Amendment**

Plaintiff also sues Megee in his official capacity, which as explained above is effectively a claim against the entity that employed Megee, the Los Angeles County District Attorney's Office. Graham, 473 U.S. at 166. County district attorneys "represent the state when they prepare to and prosecute crimes" or "train[] and develop policies for prosecutorial staff in the area of criminal investigation and prosecution." Duffy v. Alameda Cnty. Dist. Attorney's Office, No. 16-cv-5601-PJH, 2017 WL 2591286, at *2 (N.D. Cal. June 15, 2017) (citation omitted), appeal dismissed, No. 17-16447, 2018 WL 3491765 (9th Cir. Apr. 12, 2018). Thus, the Los Angeles County District Attorney's Office is a state entity, and Plaintiff's official-capacity claims against Megee fail because the 11th Amendment dictates that the State, its agencies, and its officials acting in their official capacity cannot be sued for money damages, the only type of relief Plaintiff seeks. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); Dittman v. California, 191 F.3d 1020, 1025–26 (9th Cir. 1999) ("The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court . . . ."); Leer v. Murphy, 844 F.2d 628, 631-32 (9th Cir. 1988) (holding that 11th Amendment bars official-capacity actions for damages). His

claims against Megee in his individual and official capacities therefore fail to state a claim upon which relief may be granted.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

If Plaintiff desires to pursue any of his claims, he is ORDERED to file a first amended complaint within 28 days of the date of this order, remedying the deficiencies discussed above. He should not sue individual defendants in their official capacity as a substitute for expressly naming in each applicable claim the entity he desires to hold liable. The FAC should bear the docket number assigned to this case, be labeled "First Amended Complaint," and be complete in and of itself, without reference to the original Complaint or any of its attachments. **Plaintiff is warned that if he fails to timely file a sufficient FAC, the Court may dismiss this action on the grounds set forth above or for failure to diligently prosecute.**[5]

DATED: May 15, 2019

JEAN ROSENBLUTH
U.S. MAGISTRATE JUDGE

---

[5] If Plaintiff believes this order erroneously disposes of any of his claims, he may file objections with the district judge within 20 days of the date of the order. See Bastidas v. Chappell, 791 F.3d 1155, 1162 (9th Cir. 2015) ("When a magistrate judge believes she is issuing a nondispositive order, she may warn the litigants that, if they disagree and think the matter dispositive, they have the right to file an objection to that determination with the district judge.").