**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RYAN MORRISON, | Case No. CV 19-1961-JGB (JPR) |
| Plaintiff, | |
| v. | ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| CITY OF LOS ANGELES et al., | |
| Defendants. | |

On March 15, 2019, Plaintiff, proceeding pro se, filed a civil-rights action under 42 U.S.C. § 1983 against the City of Los Angeles, the Los Angeles Police Department, the deputy district attorney who unsuccessfully prosecuted him, and four LAPD officers. He sued all the individual Defendants in their official and individual capacities. (Compl. at 1, 3-4.) His claims stemmed from a November 2016 arrest and subsequent prosecution for assault and battery, of which a jury apparently acquitted him. (Id. at 5-24.)

After screening the Complaint under 28 U.S.C. § 1915(e)(2), the Court identified numerous deficiencies, including failure to

state official-capacity claims against the individual Defendants or municipal-liability claims against the City of Los Angeles and the LAPD, and Plaintiff's attempt to sue an individual — the deputy district attorney — who appeared to have absolute immunity. The Court dismissed the Complaint with leave to amend so that Plaintiff could attempt to cure the deficiencies.

Plaintiff filed the First Amended Complaint on June 11, 2019, and the Court again reviewed it under § 1915(e)(2). He no longer sues the deputy district attorney and names the other individual Defendants only in their individual capacity. But he does still sue the City of Los Angeles and the LAPD and again has failed to state municipal-liability claims against them because he doesn't identify an LAPD custom, policy, or practice that was the proximate cause of his injuries. Accordingly, the FAC is dismissed with leave to amend.[1] See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc) (holding that pro se litigant must be given leave to amend complaint unless it is absolutely clear that deficiency cannot be cured). If Plaintiff desires to pursue any of his claims, he is ORDERED to file a second amended complaint within 28 days of this order, remedying the deficiencies discussed below.

---

[1] Plaintiff did not sign the FAC, in violation of Federal Rule of Civil Procedure 11(a) and Local Rule 11-1. He must sign any amended complaint or it will be dismissed for that reason alone. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262-63 (9th Cir. 1992) (as amended) (affirming district court's dismissal of amended complaint for failure to comply with order).

## ALLEGATIONS OF THE FAC

In the afternoon of November 27, 2016, uniformed police officers Defendants Alvaro Ramos and David Mirzoyan entered Plaintiff's bedroom, inside the apartment he shared with his mother, without a warrant or his consent. (FAC ¶¶ 22-23, 35.) The officers refused to tell him why they were there, and when he attempted to leave they kicked his legs out, twisted his arm, slammed his face into a chair, and handcuffed him. (Id. ¶ 24.) The officers brought him to a police station, where one of them questioned him about an alleged incident involving his mother that occurred the night before. (Id. ¶¶ 27-28, 34.) He told the officer that he had spent the previous evening at a coffee shop and after coming home to a "trashed" apartment — not an uncommon occurrence given his mother's "violent outbursts" — had gone straight to sleep. (Id. ¶¶ 28-29, 34.) He explained that his mother was suffering from "physical and mental health issues," was angry about his decision to move out of their apartment, and "had a history" of "threat[ning] . . . to call the police" on him if he didn't give her money. (Id. ¶¶ 31-35.)

Subsequently, Ramos and Mirzoyan, with Defendant Sergeant Ricardo Acosta's approval, arrested and charged Plaintiff with "Assault with a Deadly Weapon" and "Battery with Serious Bodily Injury" for hitting his mother with a walker. (Id. ¶¶ 39-41, 60.) According to the FAC, Plaintiff was arrested without probable cause that he had committed the charged crimes. (Id. ¶¶ 64, 68, 73, 75-76, 81, 87, 89, 91, 97.) As he later learned, Ramos and Mirzoyan, with Acosta's approval, allegedly (1) failed to collect evidence, take photographs, interview eyewitnesses, or

3

obtain relevant security footage (id. ¶¶ 62, 68); (2) ignored both "bizarre," "inconsisten[t]," and demonstrably false statements by his mother that impugned her credibility (id. ¶¶ 63-64, 71, 76, 87-88, 90-91) and a medical report that revealed that any injuries she suffered weren't caused by an assault (id. ¶¶ 58, 60-61, 88); (3) omitted exculpatory information from their police report (id. ¶¶ 66, 75); (4) "fabricated," "altered[,] and manipulated" information in the report (id. ¶¶ 67-68); and (5) targeted Plaintiff based on "bias" and "discrimination" because he was a man (id. ¶¶ 65, 126).

Defendant Detective Michael Boylls didn't conduct a follow-up investigation after speaking with Plaintiff's mother and wasn't even "able to articulate the knowledge of the elements" of each crime with which Plaintiff was charged. (Id. ¶¶ 69, 211.) He also "fabricated" information and "lied" in order to pursue a "false prosecution" and to "cover[] up the misconduct and false report made by [Ramos and Mirzoyan]." (Id. ¶¶ 70, 79.)

In early February 2017, a judge denied a civil restraining order against Plaintiff, finding that his mother's testimony wasn't credible and that she had falsified allegations against him. (Id. ¶ 49.) Subsequently, the state court held a preliminary hearing to determine whether probable cause supported the charges against Plaintiff. (Id. ¶ 51.) Plaintiff's mother testified, but she gave a "different account" from at the hearing on the restraining order. (Id. ¶ 54.) Also, the prosecutor presented "fabricated" evidence, including claiming that a medical report indicated that Plaintiff's mother's injuries were caused by an assault. (Id. ¶ 53.) The judge, "deceived" into

4

finding that probable cause supported the charges against Plaintiff, permitted the case to proceed. (Id. ¶ 57.)  In March 2018, Plaintiff was acquitted of all charges. (Id. ¶ 82.)

**STANDARD OF REVIEW**

A complaint may be dismissed as a matter of law for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010) (as amended) (citation omitted); accord O'Neal v. Price, 531 F.3d 1146, 1151 (9th Cir. 2008).  In considering whether a complaint states a claim, a court must generally accept as true all the factual allegations in it. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011).  The court need not accept as true, however, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted); see also Shelton v. Chorley, 487 F. App'x 388, 389 (9th Cir. 2012) (finding that district court properly dismissed civil-rights claim when plaintiff's "conclusory allegations" did not support it).

Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Yagman v. Garcetti, 852 F.3d 859, 863 (9th Cir. 2017).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted); Byrd v. Phx. Police Dep't, 885 F.3d 639, 642 (9th Cir. 2018) (per curiam).

**DISCUSSION**

**I.   Plaintiff's Municipal-Liability Claims Fail**

Plaintiff sues the City of Los Angeles and the LAPD under § 1983 for false arrest, false imprisonment, unlawful seizure, violation of due process, malicious prosecution, and "Negligence/Failure to Train/Supervise/Discipline." Although it appears that he has attempted to comply with the Court's order dismissing the original Complaint by identifying several LAPD policies he alleges caused his injuries, he still fails to state a municipal-liability claim because those policies were not the proximate cause of his injuries.

Municipalities and local-government entities are considered "persons" under § 1983 and therefore may be liable for causing a constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); see also Long v. Cnty. of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006). California police departments are independently suable public entities. See Streit v. Cnty. of L.A., 236 F.3d 552, 565 (9th Cir. 2001).

Because no respondeat superior liability exists under § 1983, a municipality is liable only for injuries that arise from an official policy or longstanding custom. Monell, 436 U.S.

at 694; City of Canton v. Harris, 489 U.S. 378, 385-87 (1989). A plaintiff must show "that a [municipal] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992) (per curiam) (citation omitted). In addition, a plaintiff must allege facts demonstrating that the policy was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

Plaintiff identifies two LAPD policies set forth in the LAPD manual that he alleges were the proximate cause of his injuries as well as a host of other codified LAPD policies that he alleges the individual Defendants violated. First, Plaintiff contends that the LAPD's policy on "preliminary investigations" — section 520.10 of volume one of the LAPD manual — authorizes "very restrictive preliminary investigations" and thus "allows officers . . . to avoid conducting preliminary criminal investigations and gathering of evidence and/or additional information." (FAC ¶¶ 92, 140, 178, 206, 257, 335.) Second, he asserts that the LAPD's policy on "follow-up investigations" — section 520.20 of volume one of the LAPD manual — gives officers "discretion whether or not they would do any follow up investigations." (Id. ¶¶ 104, 142, 180, 209, 260, 338.) His claims boil down to allegations that the individual Defendants wrongly arrested him and facilitated his prosecution because they engaged in an

inadequate and unlawful "restrictive" preliminary investigation, with minimal or nonexistent followup. (Id. ¶ 81.)

Plaintiff may not premise his Monell-liability claims on those two policies. First, they don't authorize what he claims they do. Section 520.10, titled "Scope of Preliminary Investigation," states,

> The scope of preliminary investigation by a uniformed officer may be very restricted or it may constitute the entire investigation of the crime. In a particular crime, the scope of the preliminary investigation may be limited by investigative policy, and in all cases it is limited by an officer's assignment work load. Consistent with his/her other responsibilities, an officer should continue a preliminary investigation to the point where the delay in investigation caused by the report being processed will not materially jeopardize the investigation.

1 LAPD 2018 4th Quarter Manual § 520.10, http://www.lapdonline.org/lapd_manual/ (last visited July 10, 2019).[2]

---

[2] The FAC includes excerpts from the LAPD manual. (See, e.g., FAC ¶¶ 351-68.) It appears that Plaintiff is referring to the most recent edition of the manual — the 2018 4th Quarter edition — which was in effect when he filed the FAC. It is unclear, however, whether the relevant policies in that edition were in effect when he was arrested and, if so, in the same form. Because the most recent edition of the manual is a public document available on a government website, the Court takes judicial notice of the entire document. See Fed. R. Evid. 201(b) (allowing court to take judicial notice of fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information on websites of two

8

Section 520.20, titled "Follow Up Investigation By Uniformed Officers," states,

> Uniformed officers may conduct a limited follow-up investigation upon supervisory approval when there is a reasonable chance of apprehending the suspect, when there is a need for obtaining additional information for the preliminary investigation report, or when there are other compelling circumstances.

Id. § 520.20.

Plaintiff misinterprets these policies as authorizing inadequate and unlawful criminal investigations. First, the manual's statement that the scope of a preliminary investigation may be "very restricted" does not suggest that an investigation may be constitutionally inadequate; rather, the policy merely acknowledges that different crimes require different types of investigations. But even assuming the two policies limit the resources that may be expended on investigatory work, they apply only to uniformed officers and not detectives, who are primarily responsible for investigating crimes. See 3 LAPD Manual § 763.67 ("A Detective Trainee . . . performs in all areas of investigation . . . under the close direction of an experienced detective for the purpose of exposing the officer to investigative techniques used in the field; performs preliminary and follow-up investigations, gathers evidence, prepares reports, obtains complaints, [and] makes arrests and testifies in court.")

---

school districts because they were government entities). But it remains to be shown that those 2018 policies are in fact relevant here.

Indeed, a separate section of the manual addressing follow-up investigations elaborates that

> [f]ollow-up investigation consists of efforts to interview victims and witnesses; locate, identify, and preserve physical evidence; recover stolen property; identify, locate, interview, and arrest suspects; present the case to the prosecutor; and cooperate in the prosecution of the defendant. Such investigations are conducted to produce evidence relating to the guilt or innocence of any suspect and to recover property.

1 LAPD Manual § 540.10.

The manual also sets forth tasks that must be completed and reports that must be generated as part of any investigation. See 4 LAPD Manual §§ 203.15 (listing reports to be completed as part of preliminary investigation), 203.20 (assigning responsibility "for the preliminary investigation and the preparation of all necessary reports" to responding field units and mandating that preliminary investigation "include, whenever applicable, canvassing the area for additional witnesses"). Therefore, the provisions Plaintiff identifies at most limit the extent to which uniformed officers may conduct criminal investigations, but the manual also sets benchmarks that any investigation must meet.

Indeed, both of the policies Plaintiff identifies must be read in context with other provisions in the manual. For instance, the manual mandates that "[a]ll law enforcement contacts and activities" be "based on legitimate, articulable facts, consistent with the standards of reasonable suspicion or probable cause as required by federal and state law," 1 LAPD

10

Manual § 345; prohibits "biased" and "discriminatory" policing," id.; emphasizes that "[t]he requirement that legal justification be present imposes a limitation on an officer's actions," id. § 508; and requires that "at the time of arrest, arresting officers must have specific knowledge of all elements of the crime for which the suspect has been arrested" and "should be able to articulate that knowledge, including how and when it was obtained, and shall document it within the report narrative," 4 LAPD Manual § 203.21.

In light of these provisions, the manual cannot be said to authorize legally inadequate investigations. Thus, even if the individual Defendants acted "unlawfully, maliciously, without provocation, and without any . . . legal authority" (FAC ¶ 103), Plaintiff's ensuing injuries weren't caused by the preliminary and follow-up investigation policies but by the individual Defendants' alleged violation of those and other LAPD policies. Indeed, the FAC recognizes as much by identifying a litany of LAPD policies they purportedly violated, including some of the ones discussed above. (FAC ¶¶ 106-29, 142-67, 181-96, 213-47, 264-307.) The failure of individual employees to follow municipal policies is insufficient to establish Monell liability. Lopez v. City of Glendora, No. 2:17-cv-06843-ODW (RAO), 2019 WL 1002498, at *9 (C.D. Cal. Mar. 1, 2019) (no Monell liability when plaintiff's alleged injury was caused by officer's "failure to comply" with police-department policy, not policy itself), appeal filed, No. 19-55292 (9th Cir. Mar. 14, 2019); Bond v. Arrowhead Reg'l Med. Ctr., No. ED CV 11-2049-DDP (PLA)., 2015 WL 509823, at *20 (C.D. Cal. Feb. 5, 2015) ("[P]laintiff may not hold a

government entity liable under § 1983 unless he can show that his injury arose from the execution of a government's policy or custom, not an official's failure to follow the entity's policies or procedures."), aff'd sub nom., Bond v. Miller, 684 F. App'x 622 (9th Cir. 2017); see also Winingear v. City of Muncie, No. 1:13-cv-01823-RLY-DML., 2014 WL 1340641, at *2–3 (S.D. Ind. Apr. 4, 2014) (no Monell liability when plaintiff acknowledged that if police department's "preliminary investigation" policy had been followed he wouldn't have been unlawfully seized and detained).

To the extent Plaintiff means to suggest that it is a "longstanding practice or custom," Gillette, 979 F.2d at 1346, for LAPD officers to "abuse" the policies governing preliminary and follow-up investigations by conducting inadequate or otherwise unlawful investigations (see, e.g., FAC ¶¶ 81, 92-93, 123, 140, 178, 206, 257, 335), the FAC's allegations do not sufficiently state that claim. Save for allegations about what occurred in his case, he has only conclusorily alleged purported abuses of the policies in other cases. But "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino, 99 F.3d at 918; see Thompson v. City of L.A., 885 F.2d 1439, 1443-44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are [sic] insufficient to establish custom."), overruled on other grounds by Bull v. City & Cnty. of S.F., 595 F.3d 964, 981 (9th Cir. 2010) (en banc).

For the same reason, Plaintiff's attempt to identify other unlawful LAPD "customs" or "practices" falls short. For instance, Plaintiff alleges that it is a "long standing common practice throughout the [LAPD] . . . to not record alleged victim or suspect statements during questioning/interviews." (FAC ¶ 100; see also id. ¶ 340.) According to Plaintiff, the individual Defendants took advantage of that practice to falsely attribute statements to his mother and omit exculpatory information from their report. (Id. ¶¶ 100, 340.) But not only has he failed to make specific factual allegations about cases other than his own that would tend to establish that such a practice exists,[3] he has also failed to adequately allege that such a practice, to the extent it does exist, is abused in the manner he suggests. Even if it is, as discussed above, any injury Plaintiff suffered was the result of the individual Defendants violating numerous other LAPD policies. At bottom, alleging that LAPD policies were violated in his case does not give rise to a reasonable inference that they are systemically being violated in the manner Plaintiff suggests.

Lastly, Plaintiff's eighth cause of action fails to state a claim that the municipal Defendants are liable for "negligence [and] inadequate training/supervision/discipline." (FAC ¶¶ 326-44.) As the Court explained in dismissing Plaintiff's original Complaint, to sufficiently plead a federal cause of action

---

[3] Likewise, Plaintiff has failed to sufficiently plead that it is a longstanding LAPD custom for officer misconduct to go unreported (FAC ¶¶ 110, 123, 147, 183, 192, 217, 270) and for officers to discriminate against male suspects in domestic-violence investigations (id. ¶¶ 126, 163, 243, 303).

against the City of Los Angeles or the LAPD on a failure-to-train theory, he must allege facts showing that each entity was "on notice that specific training was necessary to avoid this constitutional violation," Connick v. Thompson, 563 U.S. 51, 63 (2011), and no such training or only inadequate training was provided. Conclusory allegations of vague unconstitutional customs, policies, or practices are not sufficient, nor are allegations concerning only his own alleged unconstitutional injuries. See Iqbal, 556 U.S. at 678; Rodriguez v. City of Modesto, 535 F. App'x 643, 646 (9th Cir. 2013).

Plaintiff still has not referenced any events other than his own arrest or alleged any facts concerning whether or how the individual Defendants were trained. Rather, he points to the individual Defendants' alleged unlawful conduct in this case as proof that they were improperly hired and trained. (FAC ¶¶ 328, 330, 333, 336-40.) Such allegations don't establish an actionable federal claim against a municipality for failure to train or supervise. See Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1159 (9th Cir. 2012) ("showing that a single employee was inadequately trained [not] sufficient; there must be a 'widespread practice'" (quoting Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989))); Lewis v. Cnty. of San Diego, No. 13-cv-2818-L (JMA)., 2014 WL 3527719, at *5 (S.D. Cal. July 15, 2014) ("A Monell claim, whether for a municipal policy or for failure to train, generally cannot be premised on a single unconstitutional incident."); Cannon v. City of Petaluma, No. C 11-0651 PJH., 2012 WL 1183732, at *19 (N.D. Cal. Apr. 6, 2012) (plaintiff's "allegations . . . relate solely to his own,

14

isolated experiences, which cannot support a <u>Monell</u> claim for failure to train or supervise").

In sum, the FAC fails to set forth factual allegations sufficient to allow the Court to draw a reasonable inference that the municipal Defendants are liable for any alleged constitutional violation.[4]

## II. The FAC Does Not Comply with Rule 8

Plaintiff's FAC is 209 pages, 134 pages longer than his original Complaint, with factual allegations scattered throughout and not limited to the bloated 28-page factual section. It is also replete with redundancies and extraneous allegations, relying on virtually identical multipage allegations to support each of the first five causes of action. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Twombly</u>, 550 U.S.

---

[4] Plaintiff brings several state-law causes of action arising from the same alleged nexus of conduct, namely, battery (claim six), "false reports" (claim seven), and intentional infliction of emotional distress (claim nine). The California Tort Claims Act requires that any state-law tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 950-950.2. No suit may be brought until a written claim has been presented to, and rejected by, that board. <u>Id.</u> § 950.6; <u>see also</u> <u>State v. Super. Ct. (Bodde)</u>, 32 Cal. 4th 1234, 1245 (2004). As the Court previously explained to Plaintiff, he must plead compliance with the Tort Claims Act or his state-law claims are subject to dismissal. <u>See</u> <u>Bodde</u>, 32 Cal. 4th at 1245; <u>Mangold v. Cal. Pub. Utils. Comm'n</u>, 67 F.3d 1470, 1477 (9th Cir. 1995).

15

at 555 (citation and alteration omitted). Complaints that are "argumentative, prolix, replete with redundancy, and largely irrelevant" and that "consist[] largely of immaterial background information" are independently subject to dismissal under Rule 8. McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996); see also id. at 1174, 1179 (affirming dismissal under Rule 8 of plaintiff's 53-page complaint, which "mixe[d] allegations of relevant facts, irrelevant facts, political argument, and legal argument in a confusing way").

In filing any amended complaint, Plaintiff should limit himself to a "short" and "plain" statement of his claims. To the extent he still wishes to hold the City of Los Angeles and the LAPD liable for his alleged injuries, he must identify the policies or practices that were the proximate cause of those injuries but should do so only once; he need not reference or discuss policies or practices Defendants allegedly violated.

*********************

If Plaintiff desires to pursue any of his claims, he is ORDERED to file a second amended complaint within 28 days of the date of this order, remedying the deficiencies discussed above. The SAC should bear the docket number assigned to this case, be labeled "Second Amended Complaint," and be complete in and of itself, without reference to the original Complaint or FAC. **Plaintiff is warned that if he fails to timely file a sufficient**

**SAC, the Court may dismiss this action on the grounds set forth above or for failure to diligently prosecute.**[5]

Plaintiff is advised that legal help is available from the pro se clinics in this district. The clinics offer free on-site information and guidance to individuals who are representing themselves (proceeding pro se) in federal civil actions. They are administered by nonprofit law firms, not by the Court. The clinic closest to Plaintiff is located in Suite 170 of the Edward R. Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012. It is open by appointment only on Mondays, Wednesdays, and Fridays, 9:30 a.m. to 12 p.m. and 2 to 4 p.m. To make an appointment Plaintiff should call (213) 385-2977, extension 270; useful information is also available on the clinics' website, http://prose.cacd.uscourts.gov/.

DATED: July 10, 2019

JEAN ROSENBLUTH
U.S. MAGISTRATE JUDGE

---

[5] If Plaintiff believes this order erroneously disposes of any of his claims, he may file objections with the district judge within 20 days of the date of the order. See Bastidas v. Chappell, 791 F.3d 1155, 1162 (9th Cir. 2015) ("When a magistrate judge believes she is issuing a nondispositive order, she may warn the litigants that, if they disagree and think the matter dispositive, they have the right to file an objection to that determination with the district judge.").